**UNITED STATES of America**

v.

**Lloyd LEE, Jr., Appellant.**

**No. 72–1932.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 10, 1973.

Decided Oct. 2, 1974.

Rehearing or Rehearing En Banc Denied Dec. 9, 1974.

Barclay, Chief Judge, filed statefiled opinion.

Bazelon, Chief Judge, filed statements as to why he voted to deny rehearing and rehearing en banc.

26. 116 U.S.App.D.C. at 285, 323 F.2d at 290 (footnote omitted).

Bernard Koteen, Washington, D. C., (appointed by this Court) for appellant.

Stuart M. Gerson, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S.

Atty., John A. Terry, and John E. Drury, III, Asst. U. S. Attys., were on the brief for appellees.

Before BAZELON, Chief Judge, and LEVENTHAL and ROBINSON, Circuit Judges.

LEVENTHAL, Circuit Judge:

This is an appeal following appellant's conviction for possession of a short-barreled shotgun that was unregistered and without serial number, in violation of 26 U.S.C. §§ 5861, 5871, and possession of cocaine, heroin, and marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a). The central issue is whether there was reversible error because the trial court refused a special instruction concerning the particular interest of the principal prosecution witness as accomplice or informant. We affirm.

## I. STATEMENT OF FACTS

Authorized by a search warrant, Federal agents[1] and metropolitan police officers forced entrance, on November 24, 1971, into the then unoccupied apartment B-4 at 4920 A. Street, S.E. During a lengthy search, officers discovered a short-barreled shotgun with a pistol grip underneath and to the rear of a stereo cabinet located in the living room. They also seized $3000 in cash "from the sofa cushions located in the front room." Throughout the apartment were found various articles commonly used in adulterating and packaging narcotics for sale, including measuring spoons, strainers, aluminum foil, glassine bags, two playing cards and several cans of dextrose. Most important was the discovery of significant quantities of illicit drugs. A large amount of cocaine was removed from the kitchen table; a

somewhat smaller batch of cocaine was found underneath a bed; an envelope containing marijuana was found on a nightstand; and in a second bedroom, heroin was found both on the floor and in a coat hanging in the closet.

Appellant was the lessee of the A Street apartment throughout 1971. From some point in late September until October 18, the apartment was occupied, with appellant's permission, by Roland Henry and Faith Elaine Wise, both then fugitives from justice.

At trial the Government presented the items seized in the apartment, testimony of the Government's expert as to the high concentration and "street value" of the confiscated drugs (contradicted in part by appellant's witness), and the testimony of Ms. Wise.

Faith Wise testified that while she and Roland Henry occupied the apartment appellant visited daily to socialize, to carry out his shopping for the couple, and to "snort" drugs with them. At no time did she see a sawed-off shotgun in the apartment.

As to the drugs found in the apartment she testified: On October 16, 1971, she and Mr. Henry acquired a half kilogram of heroin and an eighth of a kilogram of cocaine. When they departed on the 18th, they took $120,000 in cash and left behind no money, but five "pieces"[2] of heroin and three "pieces" of cocaine for appellant to sell, under an understanding that some of the profits were to be turned over to Henry, and appellant was to keep the rest.[3]

Appellant admitted he had rented the A Street apartment. But he insisted a flood forced him to move out in July, 1971, and that he subsequently never spent any evenings there. He conceded that he had left all his furniture at the

1. The agents were from the Alcohol, Tobacco and Firearms Division of the Treasury Department and the Bureau of Narcotics and Dangerous Drugs of the Department of Justice.

2. A "piece" is evidently approximately one ounce. Tr. 299-300, 529.

3. After leaving appellant's apartment, Henry and Ms. Wise journeyed to Richmond, Miami and Las Vegas. The two were finally arrested in New Mexico on November 1, 1971, with a substantial quantity of illicit drugs and $19,000 in cash remaining from the original $120,000 (Tr. 296, 302).

apartment and had returned frequently to change his clothing.

Appellant also testified as follows: Henry and Ms. Wise stayed at appellant's apartment from September until the end of October, 1971. Henry contributed money for rent while he occupied the apartment. Appellant went to the apartment one or two times per week during Henry's stay. He admitted using cocaine with Henry and Ms. Wise and seeing a large quantity of drugs. He denied, however, that any narcotics were left with him; denied having seen the sawed-off shotgun; and denied ownership of both the coat in which the heroin was found and the narcotics paraphenalia. He did state that he had returned to the apartment on "an average of twice a week" after Henry and Ms. Wise had left (Tr. 389); but he testified that he thought that Henry and Wise were going to return to the apartment, so he left everything as it was when they went.

## II. SUFFICIENCY OF INQUIRY INTO AND INSTRUCTIONS ON SPECIAL INTEREST OF PROSECUTION WITNESS

### A. Trial Court Developments

1. *Testimony of prosecution witness*

It was brought out at appellant's trial that Ms. Wise, after leaving appellant's apartment, was arrested on November 1, 1971, in Albuquerque, New Mexico, and charged with possession of heroin, cocaine, marijuana, methadone, and demerol. She pleaded guilty to one count of possession of marijuana with intent to distribute, and received a sentence for five years' imprisonment. She testified that she made no agreements with anyone at the time in order to limit her liability to the offense of possession of marijuana. She further testified, against the advice of her attorney, about her criminal involvement in at least two additional drug-related offenses; but asserted that she had been a party to no "promises, guarantees, or understandings" with the United States Attorney's office. She has not been prosecuted for either of these offenses, according to the representations of both counsel at oral argument, which we accept.[4]

2. *Denial of request for special instruction*

At the close of testimony, government counsel requested that the judge give an informant's instruction with respect to Ms. Wise. This request was denied. It was renewed with greater vigor by defense counsel.[5] The court again refused to give the requested instruction. It stated that Ms. Wise was "not an informant, she's a plain witness. . . . She is not an accomplice."[6]

---

4. *See* United States v. Kearney, 136 U.S.App. D.C. 328, 420 F.2d 170 (1969).

5. The informant instruction requested by defense counsel was the former "red book" instruction, Junior Bar Section of D.C. Bar Ass'n, Criminal Jury Instructions for the District of Columbia, No. 18 (1966), which provided:

> An informer is a competent witness, and the use of informers is a recognized means of law enforcement. However, an informer's testimony should be examined by you with greater care than the testimony of an ordinary witness. You should scrutinize it closely to determine whether it is colored in such a way as to place guilt upon the defendant in order to further the witness' own interest. You should receive such testimony with suspicion and act upon it with caution.

The 1972 (2d) edition of these instructions includes an added provision relating to informer-addicts based on United States v. Kinnard, 150 U.S.App.D.C. 386, 465 F.2d 566 (1972), and also contains a definition of an informer:

> He is one whose services are availed of by the Government to obtain introductions to persons suspected of violating the law or to obtain other similar information for pay, or for immunity from punishment, or for personal advantage or vindication.

6. The record reveals the following colloquy (Tr. 557):

> MR. BARITZ: I see, and No. 18, informant's testimony.
>
> THE COURT: Who is the informant?
> MR. BARITZ: The defense would contend that Miss Wise is an informant, I think under—

### 3. Summation of defense counsel

In summation to the jury, defense counsel stressed that prosecution witness Wise was permitted to plead to the relatively minor offense of possession of marijuana and had two cases pending in which she might obtain immunity, and argued this was important to consider as showing bias in her testimony.[7]

### 4. Credibility instruction to jury

The trial judge gave a conventional instruction to the jury on credibility, stating that they were the sole judges of the credibility of witnesses, and advising them that they might consider any matter bearing on credibility of a witness and of the testimony given, including whether the witness had any interest in the outcome of the case.[8]

### B. Discussion of Legal Issues

In our view a fair trial was provided as to the issue of a possible special interest of the principal prosecution witness arising out of her involvement in this crime and other crimes. Defense counsel was given latitude to adduce evidence pertinent to these issues, to cross-examine the prosecution witness, and to present argument to the jury on the issue of possible witness interest and bias. The trial court charged the jury that in assessing the credibility of testimony it could take into account the interest of any witness. While the judge had latitude to give special guidance on possible interest, in the circumstances of this case we see no basis for reversal because the trial judge limited himself to the general instruction on credibility and interest.

### 1. Instructions concerning effect of witness's interest on credibility—in general

Before we consider whether and to what extent there is a requirement for special instructions on interest of witnesses, it is important to emphasize the undoubted latitude of counsel to adduce evidence pertinent to interest and to argue to the jury its impact on credibility.

Alford v. United States, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931), sustained the right of defense counsel to show that the prosecution's witness was in Federal custody, by cross-examination which, while respecting the bounds against questioning merely to harass, annoy or humiliate, was conducted in or-

---

THE COURT: You put her on—I mean the Government put her on, but she's not an informant, she's just a plain witness.

MR. DRURY: She is a witness.

THE COURT: She is not an accomplice.

MR. BARITZ: I would think that she would be an informant because of the nature of her testimony.

THE COURT: I won't give an informant's testimony. Is there anything else?

7. Defense counsel argued (Tr. 576–77):

She stated that she received no immunity from the Government. But when she was picked up in Albuquerque with a number of drugs, namely, heroin, marijuana, Demerol, methadone and cocaine, what was the result of that case? A plea to possession to marijuana.

Why was she not convicted of a larger amount of drugs, considering that she testified that she was arrested with a larger amount of drugs on her?

And she still has two cases pending, one in this very Court in this jurisdiction. What immunity could she possibly be given in the future? We don't know this. We don't know this, but that should be carefully considered, the fact that she still has pending cases. This is important to consider because it may show some bias in her testimony, she may profit from it in the future.

8. "In reaching a conclusion as to the credibility of any witness and in weighing the testimony of any witness, you may consider any matter that may have a bearing on the subject. For example, you may consider the demeanor and the behavior of the witness on the witness stand, the witness's manner of testifying, whether the witness impresses you as a truth-telling individual, whether the witness impresses you as having an accurate memory and recollection, whether the witness has any motive for not telling the truth, whether the witness had full opportunity to observe the matters concerning which the witness has testified, and whether the witness has any interest in the outcome of this case." (Tr. 591)

der "to show by such facts as proper cross-examination might develop, that his testimony was biased because given under promise or expectation of immunity" or that "his testimony was affected by fear or favor growing out of his detention." 282 U.S. at 693, 51 S.Ct. at 220. *See also* District of Columbia v. Clawans, 300 U.S. 617, 630, 57 S.Ct. 660, 81 L.Ed. 843 (1937).[9]

In Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), the Supreme Court held that the Confrontation Clause requires that a defendant be allowed to cross-examine a prosecution witness as to possible bias deriving from the witness's probationary status as a juvenile delinquent, despite a state statute directing that such status remain confidential.

The availability of vigorous cross-examination is significant context for validating the use and testimony of accomplices and secret informers as a necessary means of coping with covert criminality. On Lee v. United States, 343 U.S. 747, 757, 72 S.Ct. 967, 96 L.Ed. 1270 (1950),[10] Hoffa v. United States, 385 U.S. 293, 311, 87 S.Ct. 408, 17 L. Ed.2d 374 (1966).[11] Counsel has rea-

sonable latitude not only in questioning witnesses but in argument to the jury where, provided he abstains from unjustified character assassination and vilification, he may put his view of the veracity of witnesses, and the character and weight of their testimony.[12]

The role of the judge in giving instructions to the jury, sharply distinguished as it is from the adversarial role of counsel, brings different considerations into play. In general, the courts of this country have receded from their historic common law powers of latitude in commenting on the evidence. In furtherance of the predominant role of the jury in finding the facts, and in order to avoid the problems of unfairness associated with singling out particular witnesses or classes of witnesses, and with giving emphasis or undue prominence that unduly favors one party, courts frequently confine themselves to credibility instructions that are general in nature.[13] Even in the Federal courts, which have never yielded the right to comment on the evidence, there has been some curtailment of commentary in the wake of rulings disapproving instances of judicial comment.[14]

---

9. "Common experience teaches us that the testimony of such witnesses [private detectives acting in course of private employment], especially when uncorroborated, is open to the suspicion of bias, . . . and that their cross-examination should not be curtailed summarily." 300 U.S. at 630–631, 57 S.Ct. at 665.

10. "The use of informers, accessories, accomplices, false friends, or any of the other betrayals which are 'dirty business' may raise serious questions of credibility. To the extent that they do, a defendant is entitled to broad latitude to probe credibility by cross-examination and to have the issues submitted to the jury with careful instructions." 343 U.S. at 757, 72 S.Ct. at 973.

11. "The petitioner is quite correct in the contention that Partin, perhaps even more than most informers, may have had motives to lie. . . . The established safeguards of the Anglo-American legal system leave the veracity of a witness to be tested by cross-examination, and the credibility of his testimony to be determined by a properly instructed jury. At the trial of his case, Partin

was subjected to rigorous cross-examination, and the extent and nature of his dealings with federal and state authorities were insistently explored." 385 U.S. at 311, 87 S.Ct. at 418.

12. Hallinan v. United States, 182 F.2d 880, 885 (9th Cir. 1950), cert. denied, 341 U.S. 952, 71 S.Ct. 1010, 95 L.Ed. 1375 (1951).

13. 53 Am.Jur. Trial § 781 (Interest of Witness) ; 88 C.J.S. Trial § 340 (Undue prominence to particular matters) ; § 342 (credibility of particular witnesses) ; *see also* §§ 315e, 365.

14. As noted, and lamented, in 9 J. Wigmore, Evidence § 2551 (3d ed. 1940), *citing, inter alia,* United States v. Murdock, 290 U.S. 389, 54 S.Ct. 223, 78 L.Ed. 381 (1934) ; Quercia v. United States, 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321 (1933) ; United States v. Meltzer, 100 F.2d 739 (7th Cir. 1938) (reversing trial judge who gave his view that a government witness was entitled to credit because he did not frequent the courts, like defendant bondsmen). *See also,* e. g., United States v. Williams, 473 F.2d 507 (5th Cir. 1973).

■ This aspect of the law of trials involves a number of considerations—the role of judge and jury, the difference between rulings of law and findings of fact, and the overall composite of a fair trial. Even a Federal judge must take care lest his instruction oversteer members of a jury in fact, notwithstanding a general disclaimer that theirs is the fact function.[15] And although a Federal judge necessarily draws on his personal experiences when a case is tried to a court, as in assessment of demeanor, he does not have free range to translate these into instructions for the jury, as appears from Quercia v. United States, 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321 (1933).[16] What seems evident to one judge, based on his experience, may be questioned by another; and instructions to the jury, which deal with the law, are properly confined to propositions that reflect the wisdom of the community—an instance of judicial notice translated into an instruction.[17]

■ This is, then, an area of the law where the baseline of doctrine calls for affirmance of a judge who confines himself to general instructions on credibility as affected by witnesses' interest, and to providing in that way a context that supports the materiality of efforts of counsel to elicit evidence and present argument. Defendant then has the burden of supporting any claim that special instructions are imperative on the ground that there is justification for this exception in the need to assure a fair trial. This brings us to the doctrines on special instructions for accomplices and informers.

### 2. *Withholding accomplice instruction*

Appellant assigns as error the failure of the trial judge to instruct the jury that Ms. Wise, who by her own admission was to share in the proceeds of appellant's sales of narcotics, was his accomplice, and that being an accomplice her testimony should be "received with caution and scrutinized with care."

■ Although a conviction may rest solely on the uncorroborated testimony of an accomplice,[18] accomplice testimony is inherently less reliable than that of other witnesses. In some jurisdictions there is an absolute prohibition, typically set by statute, against conviction on the uncorroborated testimony of an accomplice. More generally the rulings permit a conviction on this basis provided a cautionary instruction is given. No fixed form has been set, and the wording of the caution varies somewhat in the cases. A conventional and approved form runs: "The testimony of an accomplice should be received with caution [or suspicion] and scrutinized with care." [19] When such an instruction

---

15. United States v. Murdock, 290 U.S. 389, 54 S.Ct. 223, 78 L.Ed. 381 (1934) ; United States v. Woods, 252 F.2d 334 (2d Cir. 1958).

16. *See also* United States v. Meltzer, 100 F. 2d 739 (7th Cir. 1938).

17. United States v. Telfaire, 152 U.S.App. D.C. 146, 155, 469 F.2d 552, 561 (1972) (opinion of Leventhal, J., which on this point constitutes the opinion of the court).

18. *See, e. g.,* Borum v. United States, 61 U.S. App.D.C. 4, 56 F.2d 301, cert. denied sub nom., Logan v. United States, 285 U.S. 555, 52 S.Ct. 459, 76 L.Ed. 944 (1932) ; Freed v. United States, 49 U.S.App.D.C. 392, 266 F. 1012 (1920) ; United States v. Miller, 451 F.2d 1306 (4th Cir. 1971) ; De Carlo v. United States, 422 F.2d 237 (9th Cir. 1970).

19. Junior Bar Ass'n for the District of Columbia, Criminal Jury Instructions for the District of Columbia, Instruction No. 2.22 (2d ed. 1972) :

Accomplices in the commission of a crime are competent witnesses and the Government has the right to use them as witnesses. An accomplice is anyone who knowing and voluntarily cooperates with, aids, assists, advises or encourages another in the commission of a crime, regardless of his degree of participation.

The testimony of an alleged accomplice should be received with caution and scrutinized with care. You should give it such weight as in your judgment it is fairly entitled to receive. You may convict a person accused of crime upon the uncorroborated testimony of an alleged accomplice only if you believe that the testimony

is requested and the testimony of the accomplice is uncorroborated, it is reversible error to deny such an instruction.[20] As the authorities cited show, this is the doctrine announced both by our court, with precedents from the days when it was still expositor of the common law of the District of Columbia, and by other Federal courts.

As to the basis of the doctrine, there is language in some decisions suggesting that its root lies in the witness's own impairment by his self-incrimination.[21] This kind of rationale harks back to old doctrines that made felons, and the accused, incompetent as witnesses,[22] but has little force today. In terms of current realities, the thought should be turned the other way around, for as Judge Brown has effectively noted, an accomplice's own "confession of the soul" carries a "ring of truth" and it is, indeed, this circumstance that impels the court to caution the jury of the dangers of accomplice testimony.[23] The need for careful scrutiny of an uncorroborated accomplice reflects the danger, underscored by experience, that he may be giving a false account to secure lenient treatment.[24]

The prospect of immunity or leniency "is usually denied, and may not exist; but its existence is always suspected."[25] And so even though there is no testimony in the particular record that the accomplice is testifying out of a prospect of leniency or immunity, the probability that accomplices as a class are likely to do so warrants the cautionary instruction as a reflection of general judicial experience—when the accomplice is uncorroborated.

Opinion is split as to whether it is "plain error" to fail to give the accomplice instruction even in the absence of a request.[26] The present case is marginal, for there was no request by defense counsel for an accomplice instruction. The District Judge did volunteer his thinking that Ms. Wise was not an accomplice, but his comment was in course of considering a request for an informant's instruction. Appellant says this comment rendered futile any explicit request for an accomplice instruction; but when a contention is seriously urged by an attorney he is likely, even in the face of preliminary resistance, to put it, with all propriety, that he would like to be heard on the subject. However, since

---

of the accomplice proves the guilt of the defendant beyond a reasonable doubt.
To illustrate the variations in language, *see e. g.,* Egan v. United States, 52 App.D.C. 384, 287 F. 958 (1923), reversing a conviction where the court says uncorroborated testimony of an accomplice—(a) at 390, 287 F. at 964, "ought to be received with suspicion, and with the very greatest care and caution," *citing* Freed v. United States, 49 U.S.App.D.C. 392, 394, 266 F. 1012, 1014 (1920); (b) at 391, 287 F. at 965, "must be closely scrutinized and received with great care and caution."

20. *E. g.,* Egan v. United States, *supra,* note 19, 52 App.D.C. at 390–391; 287 F. at 964–965.

21. *Id.* (Uncorroborated testimony of an accomplice "because of its self-incriminating character, must be closely scrutinized and received with great care and caution.")

22. 7 J. Wigmore, Evidence § 2057 (3d ed. 1940).

23. Williamson v. United States, 332 F.2d 123, 131 (5th Cir. 1964).

24. *See* United States v. Leonard, 161 U.S. App.D.C. 36, 494 F.2d 955, 974–975 (1974) (Bazelon, C. J., concurring in part and dissenting in part). *See also* 7 J. Wigmore, Evidence § 2057 (3d ed. 1940). In United States v. Becker, 62 F.2d 1007, 1009 (2d Cir. 1933), Judge Learned Hand refers to the essential ground for suspecting the testimony of accomplice is that they might have "reason to expect that their sentence might depend upon their testimony."

25. 7 J. Wigmore, *supra* note 24, § 2057, at 322.

26. *Compare* Borum v. United States, 61 U.S. App.D.C. 4, 56 F.2d 301, cert. denied sub nom., Logan v. United States, 285 U.S. 555, 52 S.Ct. 459, 76 L.Ed. 944 (1932) *with* United States v. Owens, 460 F.2d 268 (10th Cir. 1972); Tillery v. United States, 411 F.2d 644 (5th Cir. 1969); McMillen v. United States, 386 F.2d 29 (1st Cir. 1967), cert. denied, 390 U.S. 1031, 88 S.Ct. 1424, 20 L.Ed. 2d 288 (1968).

the matter was at least addressed by the trial judge, we hesitate to affirm on the ground of failure to make a request, which is required in order to assure his consideration. It suffices to dispose of this case, as will presently appear, that in our view there was sufficient corroboration to avoid the need for an accomplice instruction.

*Presence of corroboration*

■■ Where there is material corroboration, the law is that failure to give a cautionary accomplice instruction is not error—whether requested [27] or not.[28] This puts the matter to the jury with the general instruction on credibility of witnesses. Otherwise, a cautionary instruction against the accomplice tilts against believing the accomplice even when he has been largely corroborated. The matter is one for the trial judge's informed discretion, although prudence points toward giving an instruction whenever there is doubt as to the sufficiency of the corroboration. The extent of corroborative evidence required to alleviate the need for a cautionary instruction cannot be measured with mathematical precision. Not as much evidence is required as for the harmless error rule, for evidence that by itself may be insufficient to convict may nonetheless enable the trial judge to ensure that fairness is sufficiently achieved with the general instruction on credibility of witnesses.

In sum, the guidance that the law requires for the jury is a practical adjustment. When there is no corroboration, the problem of perjury looms large and warrants a judicial exposition on the frailties of accomplice testimony. When the accomplice's testimony is corroborated in material degree, there is no sig-

nificant special problem of perjury; the persisting problem of perjury in fact in the specific case is like that which besets trials generally. The jury has the benefit of the general instruction on credibility, of its own awareness of the witness' criminality, and of the latitude given defense counsel to explore the witness' possible interest, both by eliciting facts and by discourse in argument. If now the judge gives a special warning he may be unduly tilting the jury's consideration.

■■ In the case at bar, Ms. Wise's testimony was materially corroborated, and hence it does not present the danger that an innocent person might be convicted solely on the prejurious fabrication of an alleged accomplice. Possession of controlled substances with intent to distribute was established not only by Ms. Wise's testimony that such material was left with Lee but by the presence in Lee's apartment of over $3000 in hidden cash and of drugs and material indicating a substantial wholesaling operation. Federal agents seized drugs of higher concentration than that normally used by addicts, suggestive of possession for sale. They also found glassine bags, measuring spoons, strainers, waxed paper bags, white paper bags, brown envelopes and dextrose—all used in the preparation of drugs for sale. This evidence may or may not by itself have been sufficient to convict.[29] Indeed, much evidence, like the presence of the implements of drug preparation and adulteration, is consistent with the stories both of appellant and Ms. Wise. It is enough if there is evidence that confirms material points of an accomplice's tale, and confirms the defendant's identity and some relationship to the situation.[30]

---

27. *See, e. g.,* United States v. Cianchetti, 315 F.2d 584 (2d Cir. 1963) ; Pittsburgh Plate Glass Co. v. United States, 260 F.2d 397 (4th Cir. 1958), aff'd, 360 U.S. 395, 79 S.Ct. 1237, 3 L.Ed.2d 1323 (1959) ; Stoneking v. United States, 232 F.2d 385, 392 (8th Cir.), cert. denied, 352 U.S. 835, 77 S.Ct. 54, 1 L.Ed.2d 54 (1956).

28. *See, e. g.,* United States v. Leonard, *supra* note 24; Davis v. United States, 411 F.2d

1126, 1128–1130 (5th Cir. 1969) ; *cf.* People v. Camacho, 470 F.2d 919 (9th Cir. 1972).

29. Evidence of high concentration has been held probative of intent to distribute. *See, e. g.,* United States v. Echols, 348 F.Supp. 745 (D.C.Mo.1972), aff'd, 477 F.2d 37 (8th Cir.), cert. denied, 414 U.S. 825, 94 S.Ct. 128, 38 L.Ed.2d 58 (1973).

30. 7 J.Wigmore, Evidence § 2059 (3d ed. 1940).

The corroborative evidence need not resolve the conflicts between the accomplice's testimony and an exculpatory version of the sequence of events.[31]

The Government's corroborative evidence was an adequate basis to put the case to the jury, with the general instruction on witness credibility and without any special accomplice instruction directed against Ms. Wise, to decide, with full attention to the reasonable doubt standard and argument put by defense counsel, whether it accepted appellant's version of events or that told by Ms. Wise.

### 3. Refusal of informant instruction

Appellant argues that the refusal to give a cautionary instruction concerning informant testimony is reversible error. He relies on United States v. Kinnard, 150 U.S.App.D.C. 386, 465 F.2d 566 (1972).

The trial court ruled that Ms. Wise was not an informant. Certainly not every person who is an informer within the meaning of the Government's informer privilege—which applies broadly to all citizens who communicate knowledge of crimes to police, yet wish to preserve anonymity [32]—is within the purpose or scope of the cautionary instruction rule.

The cautionary instruction rule evolved as a special rule for paid informants. In Fletcher v. United States, 81 U.S.App.D.C. 306, 158 F.2d 321 (1946), Chief Judge Groner stressed the need for a special instruction where the only testimony connecting the defendant with unlawful sale of narcotics was that of a paid informant who was a drug addict. "Here, admittedly, the usefulness of the witness—and for which he received payment from the agent—depended wholly upon his ability to make out a case." The court drew on the rule established in the jurisdiction that a jury be warned in the case of evidence given by a detective engaged in the "business of spying for hire."

In Cratty v. United States, 82 U.S. App.D.C. 236, 242, 163 F.2d 844, 850 (1947), the court held *Fletcher* inapplicable in a case where there was material corroboration of the informer, applying the rule of *Borum* (supra, note 18) which removed the necessity for a special accomplice instruction where his testimony had corroboration.

The composite rulings had the effect of putting informers in the same status as accomplices in the sense that a cautionary instruction was required where there was no corroboration, or only minor corroboration that still left the government's case hanging almost entirely on informant testimony,[33] but dispensing with the need for a special instruction where there was material external corroboration of the informant's testimony.[34]

In general, the various types of shabby witnesses—the accomplices, informers, false friends, lumped together in *On Lee* and *Hoffa*—are governed by similar rules, and the showing that no accomplice instruction is required, because of corroboration, obviates as well the need for an informant instruction.[35]

31. The same doctrine appears in rulings issued by this court in rape cases at a time when the corroboration requirement in such cases was relatively stringent. Coltrane v. United States, 135 U.S.App.D.C. 295, 301, 418 F.2d 1131, 1137 (1969); United States v. Bryant, 137 U.S.App.D.C. 124, 420 F.2d 1327 (1969).

32. Roviaro v. United States, 353 U.S. 53, 59, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957).

33. *E. g.*, United States v. Griffin, 382 F.2d 823 (6th Cir. 1967); United States v. Masino, 275 F.2d 129 (2d Cir. 1960). In United States v. Becker, 62 F.2d 1007, 1009 (2d Cir. 1933), Judge Learned Hand had said that even though decoys generally do not have the same motive to fabricate as accomplices, an accomplice instruction was appropriate as to witnesses who "were not ordinary decoys [but] had reason to expect that their sentence might depend upon their testimony" and hence were as suspect as formal accomplices.

34. Todd v. United States, 345 F.2d 299, 301 (10th Cir. 1965) ("considerable" and "very substantial" corroboration).

35. Cratty v. United States, *supra*; Orebo v. United States, 293 F.2d 747, 749–750 (9th Cir. 1961).

However, as to informant instructions, the problem was carried one step further in *Kinnard*, where this court evolved a special rule for what was emphasized as a narrow category of "narcotics addicts who are paid informers for the Government with criminal charges pending against them." Such addict informers, it was pointed out, are subject to the special motive to lie, not only to make out cases as a matter of business,[36] but also to be allowed to obtain urgently desired narcotics without the usual inhibitions of law. And often the addict-turned-informer seeks "not only to produce results for the police, but also to avoid retribution from powerful figures in the drug trade." [37]

 In the very narrow class of addict-paid informants described in *Kinnard*, the existence of material corroboration would not obviate the cautionary instruction where there was a lack of corroboration on a central issue as to which informants as a class have a motive to lie, namely the issues of disposition and entrapment.

*Kinnard* plainly focused on what was the special danger arising out of the law enforcement practice of retaining paid informers prior to the commission of the offenses, generally to act as intermediaries between the police and those who will be identified by the informant. Such an informant presents particular dangers in regard to "producing" cases, *e. g.*, including the development of claims that the transactions that evolved reflected predisposition on the part of the defendant as contrasted with entrapment.

 The present case is lacking not only this "intermediary" aspect, but also any proof that Ms. Wise was paid for her information and testimony. While accomplices in general can be suspected, in the absence of corroboration, of testifying in the prospect of leniency, there is no similar general rule of experience that every witness for the Government is a paid informant. There was no evidence that Ms. Wise had been given any consideration in order to secure her cooperation and testimony.

Appellant argues that Ms. Wise has been allowed to plead to only one offense. But for this she got a five-year term. To mandate an informant's instruction on this record would be tantamount to a rule requiring the trial judge to warn the jury to receive with suspicion the testimony of any Government witness who has recently pleaded guilty to an offense less than charged, or to only one out of multiple charges. There may be instances where such a suspicion is well-founded, but a judicial instruction of automatic suspicion cannot be justified. Plea bargaining is an everyday occurrence even when neither information nor testimony is sought, and is a practice sanctioned by the Supreme Court.[38] In these so-called bargains the lesser plea may be only a fair scraping away of overcharging, or an awareness that additional prosecutions would likely result in concurrent sentences and be an unsound use of the resources of administration of justice. *Compare* United States v. Hooper, 139 U.S.App.D.C. 171, 432 F.2d 604 (1970).

It is urged that we remand for further inquiry into the circumstances surrounding Ms. Wise's decision to testify. But there was no preclusion of such inquiry at the trial. Defense counsel took full advantage of his wide latitude to conduct a probing cross-examination of Ms. Wise in an effort to uncover before the jury facts that might bear upon her bias, including the facts of her guilty plea to a reduced offense, the length of her sentence, and indeed her implication in crimes, confessed on the stand

---

36. In Fisher v. United States, 231 F.2d 99, 106 (9th Cir. 1956), the court stressed the need for a cautionary instruction on (non-addict) informants "paid money *for their long service* in procuring evidence." (Emphasis in original.)

37. 150 U.S.App.D.C. at 391, 465 F.2d at 571.

38. Santobello v. New York, 404 U.S. 257, 260, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).

(against the advice of her counsel), that were not made the subject of charge. *Alford v. United States, supra*; *Davis v. Alaska, supra.* On a record like this, there is no sound basis for an order of remand for more evidence.

### 4. *Conclusion as to fair trial*

It may be appropriate to conclude by tying together the threads of our discourse. This case concerns the infirmities of evidence, but the issues turn not on the law of evidence but on the law of trials. The dominant concern is for a fair trial by jury—fair opportunity to elicit evidence, and fair context for the jury's consideration. Here counsel had full latitude to elicit evidence and argue in summation.

 Turning to instructions, not every matter that may fairly be argued by counsel calls for an instruction. Thus, in a case where an accomplice is fully corroborated, counsel may argue to the jury concerning the dangers of accomplice testimony, although the judge will give no instruction, beyond that which gives guidance in assessing the credibility of any witness.

 The instructions that a judge should give the jury on credibility call for a sound exercise of discretion. No universal formula can be stated, except perhaps that the judge should provide a fair and balanced perspective as context for deliberation. The baseline of doctrine sustains a judge who confines his credibilty instructions to generalized comment on the significance of a witness's interest. Some cases may need more, but there is always the danger of oversteering and undue intrusion. Every time a judge is asked to caution the jury specially concerning a certain type of witness or witness's interest, he must consider whether in the context of the trial he is not in effect singling out a witness or class in such a way as to give undue weight to one party or the other.

Certain exceptions have deleveloped as necessary for a fair trial. One requires that the jury be cautioned that the testimony of an accomplice is to be received with suspicion or caution and scrutinized with care. It is sustained by the general suspicion that the accomplice is testifying in hope of leniency, even though not established for the particular case. But the instruction is not required where the accomplice is materially corroborated, lest it oversteer the jury the other way. Another exception requires an instruction for the informant paid by the Government, lacking corroboration. But that imperative is not applicable in this case, where there was material corroboration and no evidence of consideration to the witness, either received, promised or expected. There was lacking the particular vice of an addict informant paid in advance of the offense, typically to serve as intermediary between the police and offender, where a caution is appropriate even though he is corroborated in substantial measure but there is no corroboration on the issue of entrapment or disposition.

We do not say that the trial judge would have erred in enlarging on the general instruction given in this case. Indeed, even in the days when no accomplice instruction was required by the Federal appellate courts,[39] their opinions were studded with observations that such instructions were desirable.[40] And so today in the instance where an accomplice or informant instruction is not required an appropriate instruction is often desirable.[41] Accordingly, we note

---

39. At the time our court evolved a mandatory requirement, it was also a state court. *Freed v. United States, supra* note 19.

40. *E. g.,* Caminetti v. United States, 242 U.S. 470, 495, 37 S.Ct. 192, 61 L.Ed. 442 (1917); United States v. Dennis, 183 F.2d 201 (2d Cir. 1950); aff'd 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137 (1951).

41. *See* Todd v. United States, *supra*, 345 F.2d note 29, at 301, where Chief Judge Murrah said "it would have been permissible, even desirable, to call attention to the fact that the government's case is based in part upon the credibiity of testimony of an informer of unsavory character."

with approval the Government's action in this case in suggesting to the trial judge that a cautionary instruction be given, an appropriate course as to instructions that are desirable though not mandatory.

Ultimately, the trial judge has the responsibility for shaping the charge. In giving a special cautionary instruction he must do so in the exercise of a sound discretion, and must give consideration to objections made on the ground of steering. One reason for insisting on a "request" as a condition for a requirement of instruction is to assure opportunity for consideration of the fairness of the instruction to both sides.

Perhaps defense counsel could have obtained a different general instruction from that given by the trial judge, say, with wording that all testimony be given "careful scrutiny." [42] But what he sought was a special focus instruction, casting particular suspicion on the Government witness through delineation of a dangerous class of witnesses. Such special instructions are available, and even helpful, when used with discretion, but they are not mandatory when the shabby-source testimony has had significant corroboration.

■■ With appropriate general instructions on interest of witnesses and full latitude to elicit evidence and argue in summation, we cannot say that the defendant was denied a fair trial.

\*　　\*　　\*　　\*　　\*　　\*

The arrival of the dissent leads to a few supplementary remarks.

1. It is suggested that this case calls for a remand on the question of whether Wise was an addict-informer.

■■■ The record reveals that the defendant had a full and fair opportunity to pursue this question at trial. The record contradicts any assertion that the trial judge limited Lee's cross-examination of police officers on an issue that might possibly have assisted in establishing Wise's status as an addict-informer.[43]

Obviously, the efforts of defense counsel to adduce evidence on the status of Ms. Wise could not possibly have been influenced by the trial judge's denial of an informant instruction *after* the presentation of all the evidence.[44]

---

42. *Compare* Hoffa v. United States, *supra*; United States v. Green, 327 F.2d 715, 718 (7th Cir.), cert. denied, 377 U.S. 944, 84 S.Ct. 1350, 12 L.Ed.2d 306 (1964).

43. The reference to the trial transcript in the dissent's footnote 13 involved defense counsel's cross-examination of Agent Edgar Seibert. Remarks of defense counsel during a bench conference indicate that he was seeking to establish that the defendant was living on North Carolina Avenue rather than in the 4920 A Street apartment where the drugs and the shotgun were found. ("He [Lee] was in fact living on North Carolina Avenue, and that's why I want to ask him [Agent Seibert]." Tr. 75.) Defense counsel's brief reference to the possibility that someone might have informed the Government of Lee's whereabouts appears to have been merely to point out that someone knew the defendant was living on North Carolina rather than on A Street. The record contains no reference to Ms. Wise or indication that defense counsel was trying to establish that she had informed on Lee.

Furthermore, the trial judge did not limit cross-examination. He merely instructed defense counsel to ask a question proposed by the prosecution and to "then go on from there." Tr. 77. Lee's attorney then proceeded with the suggested question and concluded his cross-examination when he discovered that the witness did not arrive on the scene until after the defendant was taken into custody. Tr. 77. Defense counsel did not raise the issue of how the police discovered Lee's whereabouts in his cross-examination of two other agents who participated in the arrest. Tr. 117–18 (Agent Rivera), Tr. 265 (Agent Logan).

44. Indeed, the denial of the informer instruction did not even hamper the *subsequent* efforts of defense trial counsel, whose summation vigorously attacked Ms. Wise's credibility, focusing on the circumstances surrounding her guilty plea and the charges then pending against her. Tr. 576–77. The dissent seems to put it that such defense counsel argument attacking credibility is inherently unsatisfactory because often as noted in United States v. Young, 150 U.S.App.D.C. 98, 102, 463 F.2d 934, 938 (1972), a prosecutor's overzealous attack on credibility is not prejudicial in the light of strong evidence of guilt. This is neither good logic nor persuasive. The argument of defense counsel might well have been effective if defendant's

2. The principle of finality would be swept away by a practice of remanding whenever an appellate court's review uncovers material lines of inquiry which counsel might have probed more effectively.

There is nothing in this record that remotely suggests a denial of a constitutional right to "effective assistance" of counsel. A lawyer is often well aware after a trial is over how he might have handled it more effectively, but that is no basis for scrapping reliance on counsel and the adversary approach.[45]

3. There is a special risk of unreliability in testimony of addict-informers, in that individuals who agree to secure evidence of crimes prior to their commission, in order to avoid criminal liability or sustain their addiction, have a strong motive to manufacture crimes out of whole cloth. The dangers inherent in such "producing" cases are absent here. There is no indication that Ms. Wise agreed to serve as an intermediary between the police and Lee.

4. Even assuming Ms. Wise was an addict-informer under the standards established in *Kinnard*, the corroboration of her testimony obviated the requirement of an informer instruction.[46] Corroboration need only provide independent evidentiary support for the witness's account; it need not resolve conflicts between that account and the defendant's version of the events. Otherwise, the more fantastic the defendant's story, the harder it would be to secure this type of "corroboration."

Affirmed.[47]

BAZELON, Chief Judge (dissenting):

Although I agree with much in the Court's opinion, I firmly believe we should remand the record in this case for supplementation on certain factual issues, discussed in more detail below, before making any final decision on whether Lloyd Lee's conviction should be affirmed.

The Court as a general matter would leave issues of credibility of "shabby witnesses" such as we confront in this case to the realm of argument by trial counsel. The Court restricts the responsibilities of the trial judge because over-use of cautionary instructions on credibility might "oversteer members of a jury . . . notwithstanding a general disclaimer that theirs is the fact function." While I am very sensitive to judicial actions which might prejudice the jury,[1] I find the Court's concern that cautionary instructions might have

---

account had been supported by credibility and demeanor, to offset the demeanor of Ms. Wise and the details of evidence that corroborated her testimony.

45. The author of the dissent recently wrote that the purpose of the constitutional guarantee of effective assistance of counsel "is to assure that our adversary system of justice really is adversary and really does justice." Bazelon, The Defective Assistance of Counsel, 42 U.Cinn.L.Rev. 1, 2 (1973). It is thus instructive that the dissent makes no claim that Lee's counsel failed to satisfy even its author's expansive understanding of that guarantee.

46. As discussed in the body of the court's opinion, the discovery in defendant's apartment of a large sum of cash, drugs in higher concentrations than those normally used by addicts, and materials employed in the preparation of drugs for sale served to corroborate Wise's account by providing independent evidentiary support for the testimony that Lee was to market certain drugs and retain a share of the profits.

47. As to the conviction for possession of the sawed-off shotgun, Ms. Wise testified only that she had never seen the weapon, and therefore could hardly be said to have provided inculpatory evidence. The evidence against appellant was as if she had never testified at all.

Appellant's objection to the trial judge's remark that Ms. Wise was a "perfectly candid witness" (Tr. 331) takes that statement out of context. The statement came in the context of a discussion as to how to put certain questions concerning inconsistent statements. There was no objection. When the question was correctly put, Ms. Wise did in fact give the answer defense counsel was seeking.

1. *See* Young v. United States, 120 U.S.App. D.C. 312, 346 F.2d 793 (1965); Blunt v. United States, 100 U.S.App.D.C. 266, 244 F. 2d 355 (1957).

that effect highly problematic. The crucial fact is that the whole range of "shabby witnesses" present ascertainable and serious issues of credibility.[2] Judicial responsibility for the effect of untrustworthy evidence is, I submit, traditional.[3] One need refer only to the rule against the admissibility of hearsay, the limitations on the admissibility of evidence of prior crimes, the cautionary instruction on identification testimony,[4] the instruction that evidence be admitted only for a limited purpose[5] and to some extent the use-immunity instruction.[6] A failure to give these instructions, and I believe a failure to give the addict-informant instruction, "understeers" the jury, since the trial court itself (and this Court on appeal) must take responsibility for the threat to justice posed by unreliable evidence. To the extent the Court's opinion is based on a delegation of the responsibility for unreliable evidence to counsel, I must dissent.[7] I am fortified in my conviction that the sensitive issue of witness credibility cannot be left totally to argument of counsel by Judge Leventhal's recent assertion that improper comment on credibility by the presecutor is "not significant in terms of influencing a conviction."[8] If prosecutorial comments on credibility will not significantly affect the jury, it is hard to see how defense comments on credibility can so affect the jury. It follows that the dangers of "shabby witnesses" will go unmet unless the trial judge assumes responsibility for deflating any false credibility such witnesses might have.

Another theme running through the Court's opinion is that the trial judge should have some discretion in the decision to issue a cautionary instruction on credibility. This discretion is coordinate to the degree of unreliability of a particular witness. Thus, a mere accomplice may testify without an instruction if there is substantial corroboration of his testimony. At that point, I take it, there is a delicate issue as to whether the witness is in fact unreliable and the trial judge who has the opportunity to view the witness is best qualified to judge the need for a cautionary instruction. On the other hand, the testimony of an addict-informant is so suspect that an appeals court should reverse whenever the addict-informant's testimony is not corroborated in a respect material to the source of his unreliability. This distinction is based on the fact that an accomplice is considered unreliable because of a suspicion that he may have a motive to lie and an addict-informant is considered unreliable because of a documented existence of an actual motive to lie.

2. *See* United States v. Leonard & Sarvis, 161 U.S.App.D.C. 36, 494 F.2d 955, 974–975 (1974) (Bazelon, C. J. concurring in part, dissenting in part); United States v. Kinnard, 150 U.S.App.D.C. 386, 390–391, 465 F.2d 566, 570–571 (1972).

3. *See generally* I Wigmore on Evidence § 21, at 374 (3d ed. 1940); A. Goldstein, Reflections on Two Models: Inquisitorial Themes in American Criminal Procedure, 26 Stan.L. Rev. 1009, 1022 (1974). *Compare* Carrado v. United States, 93 U.S.App.D.C. 183, 193, 210 F.2d 712, 722 (1953) cert. denied sub nom., Atkins v. United States, 347 U.S. 1018, 74 S.Ct. 874, 98 L.Ed. 1140 (1954); United States v. Ragsdale, 438 F.2d 21, 27 (5th Cir.), cert. denied, 403 U.S. 919, 91 S.Ct. 2231, 29 L.Ed.2d 696 (1971).

4. *See* Macklin v. United States, 133 U.S.App. D.C. 139, 409 F.2d 174 (1969); United States v. Shelvy, 148 U.S.App.D.C. 1, 458 F.2d 823 (1972).

5. *See* United States v. McClain, 142 U.S. App.D.C. 213, 440 F.2d 241 (1971); United States v. Gilliam, 157 U.S.App.D.C. 375, 484 F.2d 1093 (1973).

6. *See* United States v. Leonard & Sarvis, 161 U.S.App.D.C. 36, 494 F.2d 955, 961 (1974).

7. The significance of placing responsibility for the reliability of evidence on the trial judge is largely reflected in the scope of the plain error rule. *See* United States v. Leonard & Sarvis, 161 U.S.App.D.C. 36, 494 F.2d 955, 976–977 (1974) (Bazelon, C. J. concurring in part, dissenting in part). I thus disapprove of the holdings in Virgin Islands v. Hendricks, 476 F.2d 776 (3d Cir. 1973) and United States v. Collins, 472 F.2d 1017 (5th Cir. 1972). *Compare* Tatum v. United States, 88 U.S.App.D.C. 386, 190 F.2d 612 (1951).

8. United States v. Young, 150 U.S.App.D.C. 98, 102, 463 F.2d 934, 938 (1972).

Turning first to the accomplice issue in this case, I note that I have recently expressed my reservations about affirming convictions when no accomplice instruction is given and the accomplice's testimony is not corroborated in every material respect.[9] I realize that this is a minority position, to say the least, and that the Court correctly states that the weight of precedent supports its result. I need not now decide whether the Court's arguments for relegating discretion to the trial judge[10] on the grant of the accomplice instruction where substantial corroboration exists persuade me; I believe that the record in this case should be remanded for supplementation on the issue of the propriety of an addict-informant instruction.

The addict-informant instruction, the Court asserts, need only be given where the government presents a paid addict-informant who has criminal charges pending against him. I do not believe the class of witnesses subject to the addict-informant cautionary instruction is so limited. The Court correctly identifies the specific motive to lie which necessitates the addict-informant instruction. However, it presents no convincing reasons why that particular motive is limited to the class of witnesses it describes. While I am not prepared to define with precision the outer boundaries of the class of witnesses which are subject to this specific motive to lie, I can with confidence assert that an addict witness who bargains his testimony against another defendant specifically in return for immunity or a plea to reduced charges is subject to this motive to lie.[11] As the Court notes, the need for the addict-informant instruction is obviated only when the witness's testimony is corroborated in every material respect. Since Faith Wise's testimony is not so corroborated,[12] I would reverse and remand for a new trial if it were clear that Wise were an addict who bargained her testimony against Lee for a plea to reduced charges.[13]

Unlike the Court, I find that the factual issue of whether Wise did make such a bargain cannot be resolved on the basis of this record. For that reason I would remand the record for supplementation. The evidence in the record which leads me to entertain doubt about this issue is as follows. First, we have Wise's plea bargain: she pleaded to one count of intent to distribute marijuana and at least three other counts, including accessory after the fact in the Gordon King robbery, intent to distribute heroin and intent to distribute cocaine were apparently dropped. Furthermore,

---

9. United States v. Leonard & Sarvis, 161 U.S.App.D.C. 36, 494 F.2d 955, 977 (1974) (Bazelon, C. J., concurring in part, dissenting in part).

10. I note that there is no evidence in the record before us that the trial judge's refusal to give the accomplice instruction was an exercise of informed discretion. Rather, it does not appear from the record what, if any, consideration the District Court gave to the need for the instruction.

In this context, I note my continuing puzzlement at a rule of law that states it is the "better practise" to give an instruction and then refuses to reverse a conviction on that basis. Is this a rule of harmless error? I think not, unless there is complete corroboration of the suspect witness. The Court's point seems to be that it isn't always the "better practise" to the give the instruction; while I might disagree with that, it is an intelligible position.

11. *See* United States v. Leonard & Sarvis, 161 U.S.App.D.C. 36, 494 F.2d 955, 961 (1974) which in effect extended the principle of United States v. Kinnard, 150 U.S.App.D.C. 386, 390–391, 465 F.2d 566, 570–571 (1972) to witnesses testifying under use-immunity. If Wise did make a bargain in this case before us now, she would be testifying under a limited use-immunity and the *Leonard & Sarvis* case should apply. Furthermore, the various factors which give rise to a specific motive to lie, as presented in *Kinnard*, are virtually all applicable to an addict who bargains a favorable plea in return for her testimony. *See* 150 U.S.App.D.C. at 391, 465 F.2d at 571.

12. In particular, there is no corroboration of Faith Wise's testimony that she and Henry made a bargain with Lee in which Lee would market certain drugs in return for a share of the profit.

13. I find there is sufficient evidence in the record to establish that Wise was an addict for purposes of applying the *Kinnard* factors.

on the stand she admitted participation in two other drug crimes for which she has not, according to the record before us, been prosecuted. This plea bargain should be viewed against the backdrop of a grand jury investigation into the drug traffic in the District of Columbia conducted by the prosecution. Indeed, the prosecutor offered Lee immunity in return for his testimony before the grand jury, an offer Lee refused. The sequence of Wise's arrest on November 1, the search of Lee's home three weeks later and his arrest a week after that support the inference that Wise was the initial source of evidence against Lee, evidence given while she was apparently in plea negotiations. Finally, against this background, the *prosecutor's* request for an addict-informant instruction is significant. This combination of circumstances is such that a remand for supplementation of the record would not be tantamount to requiring the instruction whenever a government witness has recently pleaded guilty to reduced charges.

It is true that Lee's attorney did not fully explore the issue of Wise's status as an addict-informant, apparently limiting himself to an unsuccessful cross-examination of Wise herself. I am not convinced that this lost opportunity to lay the factual predicate for the instruc-

tion requires affirmance. I hold this view for two reasons. First, under the specific facts of this case, it is apparent that the District Court limited Lee's cross-examination of the police officers who searched Lee's home and arrested him.[14] This limitation was important since cross-examination of those officers as to the source of their information against Lee—the precise subject Lee's counsel sought to explore—would have developed whether Wise was the sole source of the original evidence against Lee. That evidence, if favorable to Lee, could have been used to more effectively cross-examine Wise. It might also have led to further investigation by Lee's counsel. Furthermore, the District Court's summary rejection of the defense request for an instruction may also have deterred any further attempts to develop the factual predicate for the addict-informant instruction.[15]

Second, and most important, I am unwilling to place the entire responsibility for developing this factual predicate on defense counsel. My views on the responsibilities of the trial judge for unreliable evidence necessitate a holding that on the facts of this case the District Court should have received an assurance on the record from the appropriate prosecutorial official that no specific bargain had been made for Wise's testimo-

14. Trial Tr. at 74–76. The Court correctly notes that nothing in the record establishes that Lee's counsel was attempting to uncover the source of the government's information against his client by his examination of Agent Seibert. However, neither does the record establish the opposite conclusion. Furthermore, it is not necessary for us to establish counsel's motivation in order to give some weight in decision to the probability that untrammeled examination might have produced information bearing on the source of the government's information against Lee. The implication in the Court's opinion to the effect that the District Court did not really limit cross examination must contend with the fact that the District Court very definitely sustained a prosecution objection to a line of questioning by Lee's counsel.

15. *See* Trial Tr. at 554, 557; Butler v. United States, 88 U.S.App.D.C. 140, 188 F.

2d 24 (1951). The Court's suggestion that this abrupt denial could not have deterred efforts by defense counsel to further develop information on Wise's status because it came at the end of the trial is not persuasive. A sensitive approach by the District Court at the time of the instruction request might have produced at least two beneficial results. First, Lee's counsel might have responded to a suggestion by the Court that insufficient evidence existed to determine whether Wise was an addict-informant by moving to re-open the trial for the limited purpose of adducing proof on Wise's status. Second, Lee's counsel might have requested the District Court to order the prosecution to verify Wise's testimony that she had received no deals in exchange for her testimony. Such an order would seemingly be justified by the prosecutorial duty enunciated in Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959).

ny against Lee. This is not an onerous responsibility and I would not impose it unless the defense has come forward with some evidence that suggests a specific bargain. Furthermore, it is certainly not unknown for the prosecution to silently permit its witness to perjure himself with regard to potential plea bargains.[16] If the trial court fails to assume this responsibility, this Court need not reverse and grant a new trial. We can, as I suggest here, remand the record for supplementation on this issue. I, therefore, would dispose of Lee's case for the time being in that manner.

The Court properly closes its opinion with general observations on the fairness of Lee's trial. But what is its conclusion? Not really that *Lee* had a fair trial but that his counsel had a fair opportunity to argue on the addict-informant issue. Neither the Court nor I can conclude as to the fairness of *Lee's* trial until we know whether Wise was in fact an addict-informant.[17] As to that issue, we can only speculate [18] and ponder on the performance of the District Court and Lee's attorney. I would forego such an exercise and opt instead for a hearing on whether Wise was in fact an addict-informant. The dangers of this speculation are compounded by the fallibility of even the best of the trial bench and bar. Another trial judge or counsel might well have recognized the importance of developing the facts as to Wise's status as an addict-informant. So the Court adds up the elements of chance and speculation, producing a combination which always totals up to affirmance. When we contrast the uncertainty of this exercise with the small effort needed to eliminate it—a remand for supplementation of the record—I

fear we do a great injustice, more to our own ideals, perhaps, than Lloyd Lee, by affirming, without further inquiry. Furthermore, in weighing the total costs and benefits of a remand for supplementation of the record, we should properly consider the future effects of our failure to require information which would lay to rest the danger of serious error in Lee's trial. Such a failure could well encourage a fatal laxity in the administration of criminal justice. This laxity will produce more, and more difficult, errors than the one the Court avoids in this case. The prophylactic effect of a strategic remand thus will not only serve the interests of fairness to defendant Lee but will conserve judicial resources in the long run.[19] Finally, I think it important in conclusion to recall that the issue which divides the Court in this case does not concern some issue collateral to the purposes of the criminal justice system; rather it concerns an issue which raises a serious question about Lee's guilt on the charges of intent to distribute cocaine and heroin. Therefore, I must respectfully dissent.

### ORDER

On consideration of appellant's petition for rehearing, it is

Ordered by the Court that appellant's aforesaid petition is denied.

Statement of BAZELON, Chief Judge, as to why he voted to deny rehearing:

I see no need for reconsideration of the holding in this case. However, I do think that the Court's opinion should be modified by striking the paragraph numbered 4 on page 125. This paragraph appears to have been added as an afterthought. However, it purports to con-

---

16. *See* Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959).

17. Of course, this assumes that if Wise were an addict and had made a specific bargain for her testimony, *Kinnard* would be applicable and thus reversal a necessity; the Court, as I indicate in the text, seems to be arguing that *Kinnard* is not applicable in such circumstances. I may, therefore, be overstating the Court's position.

18. *Cf.* United States v. Henson, 159 U.S. App.D.C. 32, 50, 486 F.2d 1292, 1310 (1973) (Bazelon, C. J. concurring in part, dissenting in part).

19. *See* United States v. Leonard & Sarvis, 161 U.S.App.D.C. 36, 494 F.2d 955, 977 (1974) (Bazelon, C. J. concurring in part, dissenting in part).

tain a supplementary holding that there is sufficient corroboration of Wise's testimony such that no instruction on credibility need be given even if she were an addict-informant. I see no reason for reaching out to decide this issue, since it is completely unnecessary to the result, the major part of the Court's opinion being devoted to the proposition that there is insufficient evidence that Wise is in fact an addict-informant. Furthermore, paragraph 4 obfuscates the holding on this major point concerning the state of the record on Wise's status as an addict-informant. Is all that discussion mere dicta? But more important than this, this afterthought in paragraph 4 purports to establish a rule of law on the degree of corroboration necessary to obviate the need for the addict-informant instruction, thus resolving the conflicts between the various opinions in United States v. Kinnard, 150 U.S.App. D.C. 386, 465 F.2d 566 (1972) on that issue. I think such a resolution should await a case in which the issue is squarely confronted and necessary to disposition of the cause.

Passing the issue of the propriety of the holding, I furthermore think that paragraph 4 represents an incorrect view of the facts in this case. The Court notes on page 122 that "the existence of material corroboration would not obviate the cautionary instruction where there was a lack of corroboration on a central issue as to which informants as a class have a motive to lie, namely the issues of disposition and entrapment." It is not necessary in this case to explore the full ramifications of this general proposition. The facts of Lee's case require us to consider only the issue of corroboration of Lee's disposition to distribute certain quantities of drugs found in his apartment.[1] Both the Court and myself agree that there must be corroboration on the issue of disposi-

tion. Whether we might disagree on the necessity of corroboration in other respects is an issue not raised by this case and which may be confronted in some later case. Such a potential dispute is not resolved by the *holding* of this case.

Turning to the evidence on disposition, I think it clear enough that the prosecution must prove Lee specifically intended to market the drugs found in his apartment. This burden can not be sustained merely by proving that a marketable quantity of drugs was found in Lee's apartment with the paraphernalia incident thereto. There must be some proven connection between Lee and the drugs. The prosecution sought to establish that connection by proving that Lee occupied his apartment with full knowledge of the drugs. However, I think the prosecution failed in this effort since the overwhelming mass of evidence tends to show that Lee moved out of his apartment when "Roach" Henry and Wise moved in, because of his fear of Henry. To be sure, Lee did return to his apartment for clothes and most likely did know that Wise and Henry had large quantities of drugs in the apartment. However, that is not proof of a specific intent on the part of *Lee* to distribute the drugs. The only evidence tying Lee to those drugs was Wise's testimony that she, Henry and Lee had made a deal in which Lee was to market the drugs in return for a share of the profits.

The Court in footnote 46 states that there is sufficient corroboration of Lee's disposition because of three facts: (1) the presence in Lee's apartment of a marketable quantity of drugs; (2) the presence of the attendant paraphernalia; and (3) the presence of a large sum of cash. I agree that this is sufficient corroboration that *someone* intended to market the drugs. But I fail to perceive how it is corroboration of testimony that *Lee* was that someone. The

---

1. I think there is sufficient evidence quite apart from Wise's testimony to sustain the convictions for possession of heroin, cocaine, marijuana and a sawed-off shotgun.

only corroboration on that score is the fact that the items were in Lee's apartment, but as stated above the bulk of the evidence establishes that Lee moved out of his apartment after Henry and Wise moved in. There is thus no corroboration of Wise's testimony that Lee agreed with her and Henry to distribute the drugs in return for a share of the profits. It follows that if Wise were an addict-informant, the *Kinnard* instruction must be given.

### ORDER

Appellant's suggestion for rehearing *en banc* having been transmitted to the full Court and no Judge having requested a vote thereon, it is

Ordered by the Court *en banc* that appellant's aforesaid suggestion is denied.

Statement of BAZELON, Chief Judge, as to why he would vote to deny rehearing *en banc*.

While I adhere to the views expressed in my dissent, I do not believe this case presents a significant question of law such that rehearing *en banc* would be appropriate. I do not think the result of the majority opinion necessarily binds a future panel in either its sensitivity to the need for supplementation of the record in close cases or its concern with judicial responsibility for the effect of untrustworthy evidence. Rather on the particular facts of Lee's case the majority was of the view that there was insufficient doubt about Wise's testimony and its effect on Lee's conviction to justify further inquiry. Such decisions are not, except in unusual circumstances, appropriate for reconsideration *en banc*. *See* International Union, Electrical Workers v. NLRB, 163 U.S.App.D.C. 347, 502 F.2d 349, 361, cert. denied, 417 U.S. 921, 94 S.Ct. 2629, 41 L.Ed.2d 226 (1974) (Statement of Bazelon, C. J., in which Wright and Robinson, JJ., concur).