**Quinton L. TABRON, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 12157.**

District of Columbia Court of Appeals.

Argued Oct. 19, 1978.

Decided Sept. 21, 1979.

---

Francis D. Carter, Washington, D. C., appointed by the court, for appellant.

Estelle D. Kumar, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., Washington, D.C., at the time the brief was filed, and John A. Terry, Asst. U. S. Atty., Washington, D. C., were on brief, for appellee.

Before NEBEKER and FERREN, Associate Judges, and YEAGLEY, Associate Judge, Retired.

FERREN, Associate Judge:

Appellant Quinton Tabron was convicted of first-degree murder while armed, D.C. Code 1973, §§ 22–2401, –3202, possession of a prohibited weapon (a rifle) with intent to use it unlawfully against another, D.C.Code 1973, § 22–3214(b), and two counts of possession of a prohibited weapon (a sawed-off shotgun), D.C.Code 1973, § 22–3214(a).[1] On appeal, he claims trial court error in (1) refusing to order the government to produce at trial for impeachment purposes the prior convictions and juvenile adjudications of its witnesses, (2) admitting evidence of appellant's involvement in other crimes and failing to give the jury a limiting instruction with reference to that evidence, and (3) refusing to give a requested instruction on the credibility of informers and interested witnesses. Because the trial court erred in its ruling on the impeachable convictions issue, we remand for further proceedings.

I.

The government's evidence shows that on February 24, 1976, three young men robbed appellant and three of his friends at gunpoint. Later that night, appellant told his companions that he was going to "get" the robbers; he asked one of them for his father's gun. The next day, appellant obtained a shotgun and, with the same three friends, acquired a rifle as well. Again, he announced his intention to "get" the three who had robbed them. On February 26, appellant met with seven other youths. Taking two guns, the group went into Maryland, intending to rob a record store. They abandoned the plan, however, and returned to the District of Columbia; they decided to rob a People's Drug Store.

Four of the youths walked toward the drug store while appellant and three others remained nearby on a hill behind the store.

One of those who had started toward the store returned to tell appellant that he had seen "one of the boys that robbed us." Appellant took a closer look, then picked up the rifle and fired three shots, the last of which killed Robert Smith. The youths fled.

Police spoke with one of the youths who had been with appellant at the time of the shooting. He led an officer to the hill, where bullets were discovered; he then directed the officer to appellant. At the time of arrest at his home where he had been sleeping, appellant attempted to reach under his bed, but police dived under first and recovered a sawed-off shotgun. A clothing search yielded a round of high powered rifle ammunition and a shotgun shell. After being advised of—and waiving—his *Miranda* rights,[2] appellant admitted shooting Smith because Smith had robbed him.

At trial on a nine-count indictment, the government introduced the testimony of six eyewitnesses; appellant's confession to the police (and to his mother); and scientific evidence showing that the cause of death could have been a rifle shot, that the shell casings on the hill had come from a rifle, and that the caliber of rifle ammunition recovered from appellant's clothing was the same as that of the shell casings found on the hill. Appellant presented no evidence.

After a four-day trial the jury convicted appellant. The court sentenced him to prison for 20 years to life for first-degree murder while armed, and for one year on each of the three weapons offenses, to run concurrently with each other and with the life sentence.

II.

As a preliminary matter before the trial judge, appellant asked the prosecutor for the "impeachable convictions" and "juvenile involvements" of the government's witnesses. The prosecutor replied that the only convictions he knew about were juvenile

---

1. Appellant was also convicted of first-degree murder, but that count was dismissed as a lesser-included offense.

2. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

involvements, and that the government had no obligation to produce them. The trial court agreed, suggesting that the defense try to subpoena the records from the Family Division. Again at trial—at least twice—defense counsel demanded disclosure of such impeachable convictions and juvenile involvements, but the court ruled that the government had no obligation to investigate whether such records existed or, in any event, to furnish the information.

Appellant maintained at the time, and now on appeal, that the trial court's rulings violated his Sixth Amendment right to confront government witnesses.[3] Three recent opinions of this court have a bearing here. In our first opinion in *Lewis v. United States*, D.C.App., 393 A.2d 109 (1978), *aff'd on rehearing*, 408 A.2d 303 (1979), we held that impeachable convictions of government witnesses generally must be produced at trial, upon request, as a matter of due process under the line of cases beginning with *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).[4] We further held that in light of *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), juvenile adjudications may be producible as well. Subsequently, in *Smith v. United States*, D.C.App., 392 A.2d 990 (1978), we held that the Sixth Amendment does not require the trial court to permit impeachment with juvenile adjudications unless they can be used to establish bias, not merely to challenge general credibility. In addition, we held on the facts that impeachment with juvenile adjudications would not have affected the outcome; accordingly, there was no *Brady* (due process) violation. *Smith, supra* at 993 n. 3.

Finally, in this court's opinion after rehearing in *Lewis, supra*, we recognized that under some circumstances impeachment of a witness' general credibility might affect the outcome; thus, as a matter of due process under *Brady* and subsequent cases, impeachment with juvenile adjudications is not necessarily limited, as under the Sixth Amendment, *see Smith, supra*, to those which can be used to establish bias. We then outlined a procedure for trial courts to follow in evaluating whether juvenile adjudications must be disclosed (on the assumption that the court finds, preliminarily, that the prosecutor has access to District of Columbia juvenile records).

■ On the basis of these recent rulings, it is clear that the trial court erred in assuming that the records of juvenile adjudications need not be disclosed. Accordingly, we must remand the case for consideration by the trial court in accordance with the guidelines of *Lewis, supra*.

■ For the sake of clarity, a few further comments are in order. First, in referring to the use of prior convictions or adjudications to impeach for bias, we mean an effort to show that a witness currently has a relationship to the court system (*e. g.*, probation) which arguably provides a basis for that witness to curry favor with the government, perhaps even by lying. *See Gillespie v. United States*, D.C.App., 368 A.2d 1136 (1977); *State v. Schilling*, 270 N.W.2d 769, 772 (Minn.1978). Although defense counsel did vigorously cross-examine the government's key witnesses for bias along a number of lines,[5] that did not neces-

---

3. In addition to asserting a Sixth Amendment right to use prior convictions or juvenile involvements for impeachment purposes, appellant argues that the trial court erred by failing to order the government to produce juvenile involvements, as he had requested. Although appellant has not cited *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), it is clear that in seeking such a court order he is making a due process claim apropos of *Brady* —as the government recognizes in its brief. Because such a claim is closely related to the Sixth Amendment argument, we consider both issues together.

4. *See United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *Moore v. Illinois*, 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972).

5. The government's brief at p. 15 points out the following areas in which the defense cross-examined for bias: "Whether they [the witnesses] had handled any of the weapons and whether they had been charged with weapons offenses (Tr. 246, 344, 381, 386, 416); whether they had been charged with robbery or attempted robbery of the record store in Maryland or of People's Drug Store (Tr. 334, 344,

sarily make up for the court's refusal to permit cross-examination for the kinds of bias which the defense could only have probed using the witnesses' prior convictions or adjudications. *Compare Davis, supra, with Schilling, supra.* It follows, therefore, that if, on remand, prior criminal or juvenile records come to light which would facilitate cross-examination and impeachment of key government witnesses for a distinct line of bias, appellant's convictions may be subject to reversal on Sixth Amendment grounds. *Davis, supra.*

In *Springer v. United States,* D.C.App., 388 A.2d 846 (1978), this court discussed how the question of reversible error should be analyzed in this context:

> Where the record reflects a curtailment of a requested line of bias cross-examination *in limine,* so that the jury is unable properly to perform its fact-finding function in inferring bias from the testimony as a whole, we will assess cross-examination errors by a per se error standard. . . . If, however, the trial court has permitted *some* cross-examination so that the jury has sufficient information from which to infer bias (should it so choose), this court will evaluate error by application of the harmless constitutional error test of *Chapman v. California,* [386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705] *supra.* To hold harmless such error in curtailing constitutionally-protected cross-examination, it must be clear beyond a reasonable doubt "(1) that the defendant would have been convicted without the witness' testimony, or (2) that the restricted line of inquiry would not have weakened the impact of the witness' testimony." [*Id.* at 856 (citations and footnote omitted).]

*See Gillespie, supra; Schilling, supra.* In the present case, there are many possibilities. On one extreme, it could be that all six eyewitnesses were on probation for serious juvenile offenses at the time of trial, and that possible bias attributable to those situations could be called distinct from all the other lines of bias proffered at trial. Under those circumstances, appellant would be entitled to a new trial under *Springer, supra.* On the other extreme, it could be that one eyewitness was on probation for a minor juvenile offense, and that possible bias in that connection actually had been covered during cross-examination about promises made in return for testimony. In that case, any Sixth Amendment error presumably would be harmless beyond a reasonable doubt. We leave it to the trial court to sort out the facts and rule accordingly.

On the other hand, if records of convictions or juvenile adjudications are disclosed on remand which do not go to bias but only to general credibility, the trial court shall make a due process determination under *Lewis, supra,* as to whether disclosure might have affected the outcome. If the trial court concludes that the outcome would not have been affected, given the six eyewitnesses and other evidence of guilt, appellant's "conviction shall stand, subject to a right of appeal to this court." *Lewis, supra,* 393 A.2d at 118. If the outcome would have been affected (and thus due process violated), the court shall order a new trial.

Finally, if the court rules, after remand, that there are no prior convictions or adjudications to be disclosed, appellant's convictions shall stand, subject to a right of appeal. *Id.*

### III.

Before and during trial, appellant objected to introduction of the government's evi-

347, 381, 386); whether they had been charged with the homicide (Tr. 259, 344, 386, 496); whether homicide charges had been dropped (Tr. 429, 452); whether they had consulted with each other and decided to say appellant had committed the murder (Tr. 345, 427); and what promises were made in return for their testimony (Tr. 385, 430). Further, some were impeached with prior inconsistent statements in which they had admitted their involvement in planning the robberies and handling various weapons (Tr. 302). With reference to the inconsistent statements, Curtis admitted that he had given a false statement in order to protect himself and a friend (Tr. 347), and Butler admitted that in his first statement to the police he had implicated someone other than appellant for the murder (Tr. 492)." ·

dence that he had helped plan robberies of a record store in Maryland and a People's Drug Store near the site of the murder. He also objected to evidence that he was present when another tested the rifle later used in the murder. The trial court admitted this evidence on the ground that it went to premeditation or intent, was relevant to the weapons charges, and explained the events leading up to the murder.

It is well established that other crimes evidence is inadmissible except for specified, legitimate purposes; moreover, because of the danger that a jury could believe that an accused with a criminal past is likely to have committed the crime charged, the probative value must outweigh the prejudicial effect. *Day v. United States*, D.C.App., 360 A.2d 483, 485 (1976); *Drew v. United States*, 118 U.S.App.D.C. 11, 15, 331 F.2d 85, 89 (1964); *McCormick*, Evidence § 190 (2d ed. 1972). Such evidence is admissible, for example, when relevant to explain the circumstances surrounding the crime charged—if its probative value outweighs its prejudicial effect. *Chambers v. United States*, D.C.App., 383 A.2d 343, 345 (1978); *Day, supra; Wooten v. United States*, D.C.App., 285 A.2d 308, 309–10 (1971); *see United States v. Roberts*, 548 F.2d 665, 667 (6th Cir.), *cert. denied*, 431 U.S. 920, 97 S.Ct. 2188, 53 L.Ed.2d 246 (1977); *McCormick, supra* § 190, at 448.

We have no doubt that the evidence relating to the People's Drug Store, which appellant and others were intending to rob at the time appellant saw, shot, and killed Robert Smith, was relevant to explain the immediate setting of the murder, and that the probative value outweighed any prejudicial effect. This is also true of appellant's presence at the testing of the rifle.

On the other hand, the evidence of the planned robbery in Maryland (several hours before the murder) had marginal relevance. We do not, however, need to decide whether the trial court erred in admitting this evidence over objection, for the evidence could not have had a significant effect on the jury's decision. Given the properly admitted evidence of the planned robbery of People's Drug Store, the evidence of the aborted Maryland sortie was merely cumulative. Accordingly, any error in admission of the Maryland evidence was harmless. *See Harris v. United States*, D.C. App., 366 A.2d 461, 464 (1976); *United States v. Bailey*, 164 U.S.App.D.C. 310, 313, 505 F.2d 417, 420 (1974), *cert. denied*, 420 U.S. 961, 95 S.Ct. 1350, 43 L.Ed.2d 438 (1975). *See generally Kotteakos v. United States*, 328 U.S. 750, 764, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).[6]

### IV.

Finally, appellant asserts that six eyewitnesses were never charged, or had charges dropped, in exchange for testifying against appellant. He claims, accordingly, that he was entitled to a special jury instruction regarding the testimony of informers or interested witnesses. At trial he suggested three such instructions. The trial court initially denied his request but, in giving the general credibility charge, the court deviated from the standard instruction, adding:

> You may consider whether the witness has any interest in protecting himself from prosecution or in protecting others from prosecution which might have influenced his testimony during the course of the trial.

Appellant maintains that the court's failure to say more constituted reversible error.

In *United States v. Lee*, 165 U.S. App.D.C. 50, 506 F.2d 111 (1974), *cert. de-*

---

**6.** Appellant also asserts that the trial court erred in failing to instruct the jury on the limited purpose of other crimes evidence. At trial, however, appellant insisted that he did not want the trial court to highlight the evidence by giving limiting instructions. The court stated at least twice that counsel had requested no instructions on this evidence, but indicated that it wanted, nonetheless, to give such an instruction and accordingly asked counsel for advice.

Appellant reaffirmed his position that he did not want the trial court to mention this evidence. In these circumstances, it appears that appellant made a tactical decision to waive a limiting instruction; thus, it was not error for the trial court to refrain from giving one. *See United States v. McClain*, 142 U.S.App.D.C. 213, 217, 440 F.2d 241, 245 (1971); *Troublefield v. United States*, 125 U.S.App.D.C. 339, 345–46, 372 F.2d 912, 919 (1966); Super.Ct.Cr.R. 30.

*nied,* 421 U.S. 1002, 95 S.Ct. 2403, 44 L.Ed.2d 670 (1975), the United States Court of Appeals for the District of Columbia Circuit dealt with a similar question. The court held that the defendant had received a fair trial when the trial judge had given the jury a conventional instruction advising that it might consider any question bearing on credibility, including the question whether the witness had any interest in the outcome. The circuit court emphasized the fact that the defendant was able to cross-examine witnesses on their possible motive to testify falsely, and that there was corroboration of the testimony of the interested witnesses.

As in *Lee, supra,* defense counsel here had the opportunity to cross-examine the witnesses on the question whether they might be testifying in exchange for the government's dropping charges against them. Moreover, their testimony was corroborated to a large degree by appellant's own confession to the police. Thus, apropos of *Lee, supra,* it is clear that the trial court's failure to say more in its credibility instruction was not error.

### V.

On the basis of Part II, *supra,* the case is remanded for further proceedings consistent with this opinion.

*So ordered.*