**Milton DAVIS, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 85–121.

District of Columbia Court of Appeals.
Argued Jan. 2, 1986.
Decided May 20, 1986.

David Picon, Student Counsel, with whom Steven H. Goldblatt, Georgetown University Law Center, appointed by this court, and Martha Tomich, Appellate Law Fellow, were on brief for appellant.

Deborah Young, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., and Michael W. Farrell, Asst. U.S. Atty., were on brief for appellee.

Before MACK, NEWMAN and ROGERS, Associate Judges.

NEWMAN, Associate Judge:

This case comes before us for the second time. In *Davis v. United States*, 482 A.2d 783 (D.C.1984), appellant sought reversal of his conviction of carrying a pistol without a license. D.C.Code § 22–3204 (1981). We remanded the record for further proceedings after determining that the trial court violated appellant's fifth and sixth amendment rights to due process and to present witnesses in his defense by sustaining a claimed fifth amendment privilege against self-incrimination of a witness called by appellant without an inquiry to determine whether the witness was in a situation where he "has reasonable cause to apprehend danger" from his testimony. *Davis, supra,* 482 A.2d at 785–86. We left it to the trial court on remand to determine whether the excluded witness had properly invoked the privilege of self-incrimination and, if not, to evaluate the witness' testi-

mony and determine whether the government has demonstrated that the omission of the testimony at trial was harmless constitutional error using the standard of *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). During the remand hearing the trial court determined that the witness, Garvin, did not have a valid fifth amendment privilege, and consequently, his testimony had been improperly excluded during appellant's trial. However, after reviewing Garvin's testimony and the evidence presented at appellant's trial, the court concluded that the error was harmless based upon the government's demonstration of evidence beyond a reasonable doubt that Garvin's testimony would not have affected the jury's verdict as to appellant. We conclude that the appropriate scope of review following the finding of harmless error on remand is whether the trial court was clearly erroneous. Having determined that the trial court was not clearly erroneous, we sustain its ruling on the matter. Accordingly, we affirm appellant's conviction of carrying a pistol without a license.

## I

The factual circumstances leading to appellant's indictment are detailed in *Davis, supra,* 482 A.2d at 784–85. Prior to trial, Davis indicated that he would call a witness, Theodore Garvin, to testify about the events which occurred and ultimately led to appellant's arrest.[1] Garvin refused to testify, arguing that such testimony could subject him to potential prosecution by the Corporation Counsel of the District of Columbia for possession of an unregistered firearm and unregistered ammunition. The trial court agreed without conducting any inquiry and ruled that Garvin had a fifth amendment right to refuse to testify, which he had properly invoked, and therefore was not available as a witness.

In reviewing the trial court's ruling we noted that the fifth amendment requires the judiciary to protect a defendant's sixth amendment right to have compulsory process for obtaining witnesses on his behalf. 482 A.2d at 785 (citations omitted). We also pointed out that it is the duty of the trial judge to determine whether a witness' claim of a privilege against self-incrimination can be properly invoked. The trial court must conduct such inquiries necessary to enable a determination "from the totality of circumstances whether the witness has a reasonable cause to apprehend danger [of self-incrimination]." *Id.* at 785 (citations omitted).[2] We then held that "[h]ere, the trial court made no inquiry to determine whether the witness was in a situation where he had reasonable cause to apprehend danger", and concluded that the record was insufficient to permit us to determine whether the trial court's exclusion of Garvin's testimony was indeed substantial.[3] *Id.* at 785. Accordingly, we remand-

---

1. Theodore Garvin was one of three other persons who, along with Davis, were stopped in a yellow Chevette and arrested by police officers responding to a lookout for a car involved in a recent shooting. *See Davis, supra,* 482 A.2d at 784. Following their arrest appellant Davis, Garvin, and the two others [Harrison Kemper and Cassandra Perry] were jointly charged with carrying a pistol without a license and unlawful possession of a controlled substance. D.C.Code §§ 22–3204, 33–541(c) (1981). Garvin pled guilty to the possession of heroin and was sentenced to serve one year consecutively with any other sentence. The trial court dismissed the pistol charge against Garvin on the government's motion as part of a plea bargain. *Davis, supra,* 482 A.2d at 784. Following trial the jury found appellant Davis, Kemper and Perry guilty of carrying a pistol without a license and sen-

tences were imposed. The court granted a motion for judgment of acquittal on the drug charge as to all defendants.

2. We further noted that the privileges may not be deemed to have been properly invoked by a witness where an examination of the circumstances reveals that "a narrower assertion" rather than "a blanket privilege ... will protect his rights." *Id.* at 785 (citing *Vaughn v. United States,* 364 A.2d 1187, 1189 (D.C.1976).

3. We noted that "[t]he totality of the court's inquiry consisted of asking the witness whether upon advice of counsel, he desired to invoke the privilege against self-incrimination. When the witness answered in the affirmative, the trial court ruled the witness could not be called. This was error." *Id.* at 785. We also observed

ed the case for the trial court to conduct a proper inquiry into the propriety of Garvin's claim of a privilege against self-incrimination. *Id.* at 786.

During the remand hearing the government presented evidence that, as part of Garvin's plea agreement, the Corporation Counsel had given the U.S. Attorney full discretion whether to prosecute Garvin for possession of an unregistered firearm or ammunition. In light of this testimony, the court determined that the Corporation Counsel would not prosecute Garvin for having an unregistered firearm and unregistered ammunition. Thereafter, the court heard testimony from Garvin concerning the circumstances of his (and appellant Davis') arrest. Garvin testified that at the time of the arrest a Ms. Perry was driving the vehicle in which they were apprehended; appellant Davis was in the front passenger seat; a Mr. Kemper was seated behind Perry; and Garvin was behind Davis.[4] Garvin also testified that he never saw a gun. The trial court also heard argument from counsel on whether the exclusion of the testimony at trial was harmless beyond a reasonable doubt. After taking the matter under advisement to review the trial transcript and assess the impact of Garvin's testimony, the court ruled the government had shown that the exclusion of Garvin's testimony was a harmless error beyond a reasonable doubt; accordingly the trial court declined to vacate Davis' conviction. Now before this court again, Davis challenges the trial court's determination of harmless error.

He asserts that the trial court's determination of harmless error is a mixed question of law and fact necessitating *de novo* review by this court.

## II

■ We regularly make determinations of whether trial court error is harmless, or harmless beyond a reasonable doubt.[5] Generally, we do so without remand to the trial court. However, in cases where evidence appears to have been improperly excluded but the record does not disclose the content of such evidence (by proffer or otherwise), we generally remand to the trial court for a hearing to supplement the record with that evidence. In such cases, we direct the trial court to determine whether such evidence should have been admitted, and if so, the effect of its exclusion on the judgment. We followed that procedure in *Tabron v. United States*, 410 A.2d 209 (D.C.1979) (*Tabron I*). There, the trial court improperly ruled that prior juvenile adjudications of government witnesses did not have to be disclosed to the defendant since they could not be used for impeachment. Since the record on appeal did not disclose whether such adjudications existed and if so, the offenses involved, we remand the case to the trial court to determine the facts with respect to juvenile adjudications and the impact that disclosure of such adjudications, if any, would have had on the outcome of the trial. When the case returned here after remand, we applied the "clearly erroneous" test, thereby giving deference to the trial court's deter-

---

that the trial court's error was compounded by its failure to consider "alternatives which might have resolved any conflict between Davis' rights ... and any reasonable concerns that Garvin might have about self-incrimination...." *Id.*

4. Ms. Perry and Mr. Kemper were jointly charged and indicted with codefendants Garvin and Davis. *See infra* note 2.

5. In *Chapman v. California,* 386 U.S. 18, 22, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967), the Supreme Court set forth the applicable standard of appellate review for questions of harmless constitutional error. The court noted that reversal of a conviction is not warranted where the error

is shown to have been harmless beyond a reasonable doubt; moreover, "there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may be deemed harmless, not requiring automatic reversal of the conviction." *Id.* Accord *United States v. Hastings,* 461 U.S. 499, 510–11, 103 S.Ct. 1974, 1981–82, 76 L.Ed.2d 96 (1983) (restating *Chapman* test for harmless constitutional error. "The question a reviewing court must ask is this: absent the ... [error], is it clear beyond a reasonable doubt that the jury would have returned a verdict of guilty?" *Id.*).

mination that the improperly excluded juvenile convictions would not have affected the witness' general credibility to the extent that it might have affected the outcome of the trial. *Tabron v. United States*, 444 A.2d 942, 946 (D.C.1982) (*Tabron II*)[6]; *see also District of Columbia v. Gandy*, 458 A.2d 414, 416 (D.C.1983) ("As for the possible impact of the evidence on the jury, we have, on occasion, given deference to the trial court's evaluation....") (citing, *inter alia, Tabron I & II, supra*).

Davis seeks to avoid the impact of *Tabron II* by contending that our reference to the "clearly erroneous" standard was without explication of our basis for adopting that standard and that it constituted dicta. He urges that we follow such cases as *Adamson v. Ricketts*, 758 F.2d 441 (4th Cir.), *reh'g en banc granted*, 764 F.2d 1343 (1985), and *Proffitt v. Wainwright*, 685 F.2d 1227 (11th Cir.1982), *modified on reh'g*, 706 F.2d 311, *cert. denied*, 464 U.S. 1002, 104 S.Ct. 508, 78 L.Ed.2d 697 (1983). Both of those cases arose in the context of federal habeas corpus review of state court convictions. They concluded that harmless error is a mixed question of law and fact, and that the state court's determination was entitled to no deference. *See also Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980) (mixed determinations of law and fact are not subject to a presumption of correctness under 28 U.S.C. § 2254(d)). We decline to follow the approach of those cases.

First, we note that where federal appellate courts are reviewing federal trial court rulings about the potential impact of certain evidence upon the outcome of the proceedings, they usually give deference to the trial court's determination of mixed questions of law and fact. For example, in *United States v. Jenrette*, 240 U.S.App.

D.C. 193, 744 F.2d 817 (1984), *cert. denied*, — U.S. —, 105 S.Ct. 2321, 85 L.Ed.2d 840 (1985), while upholding the trial court's determination that disclosure of certain *Brady*[7] material would not have changed the trial's outcome, the court stated, "[t]he district judge is, of course, best suited to evaluate the significance of the undisclosed materials. His judgment accordingly deserves great deference." *Id.* at 201, 744 F.2d at 825. *See United States v. Provenzano*, 615 F.2d 37, 49 (2d Cir.1980) (same); *United States v. Librach*, 609 F.2d 919, 922 (8th Cir.1979) (same).

Second, we note that the Supreme Court of the United States has recently addressed this general area in the context of federal habeas corpus review of state court determinations as to whether a confession is voluntary. *See Miller v. Fenton*, — U.S. —, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985). Specifically, the Court was required to determine whether a state court's finding on voluntariness "shall be presumed to be correct" under 28 U.S.C. § 2254(d). In the course of its opinion, the Court noted that whether one denominates an issue as one of law, fact, or a mixed question of law and fact, is often "as much a matter of allocation as it is of analysis." *Id.* — U.S. at —, 106 S.Ct. at 451–452. The Court opined that

where the issue falls somewhere between a pristine legal standard and a simple historical fact, the fact/law distinction at times has turned on a determination that, as a matter of the sound administration of justice, one judicial actor is better positioned than another to decide the issue in question.

\* \* \* \* \* \*

[Certain] considerations often suggest the appropriateness of resolving close questions concerning the status of an

---

**6.** While we did review, *de novo*, the trial court's determination of the impact of the juvenile adjudications on the witnesses' bias, we did so only because the trial court had applied the wrong standard. *Id.* at 944. We said that the trial "courts factual findings are sufficiently ex-

plicit for this court to resolve the appeal without further remand." *Id.*

**7.** *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1983).

issue as one of "law" or "fact" in favor of extending deference to the trial court. When, for example, the issue involves the credibility of witnesses and therefore turns largely on an evaluation of demeanor, there are compelling and familiar justifications for leaving the process of applying law to fact to the trial court and according its determinations presumptive weight. *Patton v. Yount* [467 U.S. 1025, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984)] and *Wainwright v. Witt* [469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985)] are illustrative. There the Court stressed that the state trial judge is in a position to assess juror bias that is far superior to that of federal judges reviewing an application for a writ of habeas corpus. Principally for that reason, the decisions held, juror bias merits treatment as a "factual issue" within the meaning of § 2254(d) notwithstanding the intimate connection between such determinations and the constitutional guarantee of an impartial jury.

*Id.*

Since the Court's holding dealt with the meaning of 28 U.S.C. 2254(d) within the context of federal habeas corpus review of state court proceedings, we recognize that *Miller v. Fenton, supra*, strictly speaking, is not binding on us as to our measure of review of Superior Court rulings. However, we find the Court's analysis supports our conclusion that the "clearly erroneous" standard is appropriate here for review of the trial court determinations of harmless error.

In the present case, the trial court's determination of harmless error was made only after a full review of the trial transcript and testimony received at the remand hearing. In accordance with our remand directive set forth in *Davis, supra*, 482 A.2d at 786, the trial court concluded that although Garvin could not refuse to testify on the ground of self-incrimination, the exclusion of his testimony had no impact upon defendant's conviction. The record from the remand hearing supports

such a conclusion; we affirm the decision of the trial court.

*Affirmed.*