**Russell JACOBS, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 98–CF–1037.

District of Columbia Court of Appeals.

Argued Feb. 3, 2000.
Decided March 9, 2000.

William T. Morrison, Silver Spring, MD, for appellant.

Thomas S. Rees, Assistant United States Attorney, with whom Wilma A. Lewis, United States Attorney, and John R. Fisher and Thomas J. Tourish, Jr., were on the brief, for appellee.

Before FARRELL, REID, and GLICKMAN, Associate Judges.

FARRELL, Associate Judge:

Found guilty by a jury of a host of crimes including armed kidnapping and assault with intent to kill, appellant contends that the trial court erred in refusing to give an accomplice instruction to the jury as well as in giving the false or inconsistent statements instruction without amending it to include an express requirement of materiality. Rejecting both contentions, we affirm.[1]

### I.

The government's evidence fairly permitted the jury to find that appellant aided and abetted two others in kidnapping and repeatedly shooting Bryant Lawson, leaving Lawson a quadriplegic. The events leading to the shooting began when, after a neighborhood football game, Omar Ballanger fired a shot from a handgun that nearly struck Lawson. Lawson took the gun from Ballanger and threw it into a

---

1. Although appellant did not raise the issue in his main brief, the government points out that one or more of his convictions merge. Appel-

lant may seek relief from the cumulative sentences by a motion filed under Super. Ct. Crim. R. 35(a).

dumpster. Ballanger went home and telephoned his half-brother, Reggie Jacobs, to whom the gun belonged, to report these events. Appellant then drove Reggie and Brian Love to Ballanger's house where Reggie angrily confronted Omar about the loss of the gun. Reggie directed Ballanger to accompany the three men to Lawson's house, with appellant driving.[2] When they arrived there, Reggie and Love forced their way into the house and ordered Lawson at gunpoint to take them to the gun he had discarded. As appellant waited in the car (and refused Ballanger's request to be let out), Reggie and Love pulled Lawson into an alley while striking him with their guns. From the car, appellant ordered Lawson to retrieve the discarded gun and bumped or pushed him hard with the front of the car, causing Lawson to think "they [were] going to run over me and shoot me." When Lawson reached into the dumpster where he had thrown the gun, appellant yelled a warning to the others. Reggie and Love thereupon fired a series of shots at Lawson, striking him repeatedly. As Lawson lay on the ground, appellant directed the shooters to get into the car and drove them away quickly.

## II.

Appellant first contends that the trial court erroneously refused his request for the accomplice jury instruction as to Omar Ballanger, the government's principal witness. *See* CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, § 2.22 (4th ed.1993). The government argues that Ballanger did not fit the description of an accomplice because there was no evidence supporting an inference that he sought to assist or encourage the others in seizing and shooting Lawson. Appellant, in turn,

points to the evidence that Ballanger originally shot a gun in Lawson's direction, then threatened to call his brother if the gun were taken from him and in fact called Reggie to report the loss of the gun, as well as evidence (in appellant's statement to the police) that Ballanger had told the others where Lawson lived. Although the evidence was not strong of Ballanger's active involvement in the kidnapping and assault (appellant's trial counsel termed the accomplice argument a "stretch"), we agree that it would not have been unreasonable for the jury to view him as an accomplice.[3] We nevertheless conclude that the trial court did not abuse its discretion in declining to give the accomplice instruction.

Appellant was given free rein to question Ballanger about—and to argue to the jury—his incentives to testify favorably for the government in order to avoid prosecution for the events leading up to and including the shooting. In keeping with that evidence and argument, the trial court told the jury as part of the general instruction on witness credibility to consider any motive a witness had not to tell the truth or any interest he had in the outcome. Moreover, Ballanger's testimony was corroborated in substantial detail by other witnesses and, to some extent, by appellant's statement to the police.

In these circumstances this court's decision in *Tabron v. United States*, 410 A.2d 209, 214–15 (D.C.1979), adopting the analysis of *United States v. Lee*, 165 U.S.App. D.C. 50, 506 F.2d 111 (1974), demonstrates that the trial court's refusal to instruct more specifically on the need to view Ballanger's testimony with caution was not an abuse of discretion. Appellant disputes this conclusion by arguing that in *Tabron*

2. During the trip appellant told Ballanger to lean far back in the car seat, apparently so as not to be recognized in Lawson's neighborhood.

3. The government acknowledges that Ballanger's phone call to Reggie Jacobs may have "triggered" the retaliation. His total involve-

ment went beyond that of the witness in *Mitchell v. United States*, 609 A.2d 1099 (D.C. 1992) (relied on by the government), who merely witnessed the shooting, left the scene with the defendant, and later took a bribe of drugs not to talk about what he had seen. *Id.* at 1111–12.

the independent confirmation of the accomplice's testimony was more complete than here, including a confession by the defendant. But our decisions have not required a point-for-point corroboration of accomplice testimony before the general credibility instruction (together with cross-examination and argument) may be relied on to focus the jury on the witness's special motivation to shade his testimony. *See Ali v. United States,* 581 A.2d 368, 378 (D.C.1990) (citing cases). Rather, our decisions are consistent with the court's statement in *Lee, supra,* that:

> When the accomplice's testimony is corroborated in material degree, there is no significant special problem of perjury .... It is enough if there is evidence that confirms material points of an accomplice's tale, and confirms defendant's identity and some relationship to the situation. The corroborative evidence need not resolve the conflicts between the accomplice's testimony and an exculpatory version of the sequence of events.

*Lee,* 165 U.S.App.D.C. at 59–60, 506 F.2d at 120–21 (footnotes omitted). *See also United States v. Laing,* 281 U.S.App. D.C. 266, 272, 889 F.2d 281, 287 (1989); *United States v. Murvine,* 743 F.2d 511, 517 (7th Cir.1984).

In this case, several eyewitnesses besides Ballanger confirmed that appellant drove Reggie Jacobs and Brian Love first to Ballanger's house and then to Lawson's house, where appellant waited outside in his car while Reggie and Love entered. These witnesses further confirmed that, as Lawson was being forced into an alley and beaten with guns, appellant bumped him hard from behind with the front corner of his car, causing Lawson to fear that "they [were] going to run over me and shoot me."[4] Ballanger's testimony also was not alone in describing the shootings in the

alley and confirming that Love and Reggie then jumped into appellant's car, which "screeched off." Indeed, appellant's own statement to the police placed him at the scene of the shootings and confirmed that, after Love · fired shots, he and Reggie jumped into appellant's car. This corroborative evidence went beyond ."confirming material points of [Ballanger's] tale, ... [appellant's] identity[,] and some relationship [on his part] to the situation," *Lee, supra;* it confirmed appellant's active complicity in the armed retaliation for Lawson's earlier conduct. It sufficed, in sum, to allow the court to "put[ ] the matter [of Ballanger's trustworthiness] to the jury with the general instruction on credibility of witnesses." *Id.* at 59, 506 F.2d at 120.

### III.

Appellant further contends that the trial court erroneously failed to modify the standard instruction on a defendant's prior false or inconsistent statements to include a requirement that appellant have "intended to deceive the police about a material matter." Although appellant argued to the trial court unrelatedly that the instruction should not be given at all (an objection he does not renew on appeal), he never requested the amended language he now urges us to require. We accordingly review the present contention only for plain error. *See United States v. Olano,* 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); *Green v. United States,* 718 A.2d 1042, 1056 (D.C.1998).

We find no error, much less plain error, in the court's failure to add an express "materiality" requirement to the standard instruction.[5] Materiality, in the sense of relevance, is normally decided by the trial court as the condition of admitting evidence. *See, e.g., Punch v. United States,* 377 A.2d 1353, 1358 (D.C.1977).

---

**4.** One eyewitness stated: "I [saw] the car hitting him in the—towards his legs like where his butt [is] at. I kept seeing his knees move, like going forward like it was bumping him, like a hard impact ...." The witness went on to state that appellant's car was

"taking and pushing [Lawson] towards the end of the other alley ."

**5.** *See* CRIMINAL JURY INSTRUCTIONS, *supra,* No. 2.29.

Consequently, our decisions sustaining the admission of prior inconsistent statements of a defendant as revealing possible "consciousness of guilt" have not implied that the jury again must make—and be told to make—a threshold finding of materiality before considering the statements. *See, e.g., Nelson v. United States*, 601 A.2d 582, 595–96 (D.C.1991); *Mills v. United States*, 599 A.2d 775, 783 (D.C.1991). Rather, the jurors are told that if they decide that the prior statements were in fact false or inconsistent with the trial evidence, they should "consider and weigh" them along with that evidence and give them "the weight" they deserve—an inquiry that naturally would cause the jury to evaluate the centrality (or materiality) of the falsity or inconsistency to the issues at hand. In short, the amendment appellant urges is neither required nor necessary. His concern that on the facts of *this* case the jury might have given undue weight to "immaterial" inconsistencies in his police statement is unfounded: the whole thrust of the statement (including his insistence that "I was not involved in the situation. I was just checking on my little brother.") was self-exculpatory and could be weighed by the jury against the contrary evidence the government presented at trial.

The judgments of conviction are, therefore,

*Affirmed.*

